(33 P.3d 862)

No. 86,213

STATE OF KANSAS, *Appellee*, v. JOHN W. PARTRIDGE, JR., *Appellant.*

Opinion filed October 19, 2001.

*Darren K. Patterson*, of El Dorado, for appellant.

*Morgan Metcalf*, assistant county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before GERNON, P.J., KNUDSON and BEIER, JJ.

KNUDSON, J.: John W. Partridge, Jr., appeals his conviction for driving while suspended under K.S.A. 2000 Supp. 8-262. Partridge contends the stop of his vehicle on a public highway was not based upon reasonable suspicion of a traffic violation and the trial court erred in denying his motion to suppress the vehicle stop, including his arrest and subsequent inculpatory statements.

We affirm because the arresting officer did have reasonable suspicion to stop Partridge's vehicle.

At approximately 7:35 p.m. on March 6, 2000, Deputy Brad Good of the Butler County Sheriff's Department received a call from the department's dispatcher reporting a reckless driver southbound on Highway 196 between Potwin and El Dorado. The dispatcher told Good a motorist used her cell phone to call and report following a reckless driver in a gray passenger car with Kansas license tag number NZU 155. The suspect car was in a group of vehicles. Although not known by Good at the time of the stop, the caller had given the dispatcher her name, Darla Casper, and stated she was calling from her car phone.

In addition to the information given by the dispatcher, Good testified to earlier radio traffic on his police scanner from the Harvey County Sheriff's Department with a similar report of a possible reckless driver southbound on Highway 196 entering Butler County.

Deputy Good pulled off on the side of the road at Northwest 20th and Highway 196 and waited for the car to pass. Sergeant Miller, who was located in another patrol car north of Good on Highway 196, radioed Good that the suspect car had just passed his location. When the car passed Good's location, he proceeded in pursuit. The car matched the description given by dispatch, both in color and the license plate number. Good did not personally observe any traffic violation.

Good stopped the car, whose sole occupant was John W. Partridge, Jr. When asked for his license, registration, and proof of insurance, Partridge said his driver's license was suspended. Deputy Good confirmed the suspension through dispatch and learned Partridge also had a warrant from Butler County. Deputy Good placed Partridge under arrest for the warrant and transported him to jail. Deputy Good also issued Partridge a notice to appear for driving while suspended.

Partridge proceeded to a bench trial on the amended charge of driving while suspended, a class B misdemeanor, and was convicted. He now appeals.

Partridge argues the trial court erred in denying his motion to suppress because Good lacked reasonable suspicion to justify the stop of his vehicle.

The sole issue on appeal is whether Good was legally justified in stopping Partridge's car. Because the controlling facts are undisputed, the question of whether to suppress is a question of law subject to unlimited review. See *State v. Rexroat*, 266 Kan. 50, 53, 966 P.2d 666 (1998).

In *State v. Slater*, 267 Kan. 694, 696, 986 P.2d 1038 (1999), the Supreme Court framed the issue on appeal to be:

"The question raised by this appeal is whether the anonymous tip of a 'possible drunk driver' at a specific location, together with a specific description of the vehicle, license tag number, and address of the registered owner is alone sufficient

to provide an articulable and reasonable suspicion that a crime is being committed."

The court held, under the totality of the circumstances involved in the case, the information given by the anonymous caller, when combined with the officer's corroboration of the description and license plate number of the vehicle before the investigatory stop, was sufficiently reliable to provide the officer with reasonable suspicion of criminal activity. 267 Kan. at 706.

In the present case, Deputy Good testified he stopped Partridge's car for safety reasons. When denying Partridge's motion, the trial court recognized the risk to public safety that a reckless driver posed. Factually, this case is remarkably similar to *Slater*, except in this appeal the State's evidence is stronger because the caller is not anonymous and she gave the dispatcher an explanation supporting the reliability of the information (she was following Partridge on the highway and personally saw his erratic driving).

In *State v. Tucker*, 19 Kan. App. 2d 920, 878 P.2d 855, *rev. denied* 255 Kan. 1007 (1994), the police dispatcher received an anonymous tip that a vehicle was being driven erratically by a possibly intoxicated driver and running other vehicles off the roadway. The tip was verified as to the description of the vehicle, description of the driver, and the highway on which the vehicle was traveling. We held there was a sufficient basis to stop the vehicle for the safety of the driver and the motoring public (Green, J. dissenting). 19 Kan. App. 2d 920, Syl. ¶ 7.

In both *Slater* and *Tucker*, the initial information was from an anonymous informant. Conversely, in this appeal, we have a citizen-informant who steps forward with firsthand information that a serious traffic violation is occurring in her presence and as she is speaking to the dispatcher. Ordinarily, these circumstances weigh in favor of finding the information to be reliable and truthful. In *Kaysville City v. Mulcahy*, 943 P.2d 231, 235 (Utah App. 1997), the Utah Court of Appeals explained:

"In contrast [to an anonymous caller], an identified 'citizen-informant' is high on the reliability scale. [Citations omitted.] The ordinary citizen-informant needs no 'independent proof of reliability or veracity.' [Citations omitted.] We simply assume veracity when a citizen-informant provides information as a victim or wit-

ness of crime. [Citations omitted.] 'This is because citizen informers, unlike police informers, volunteer information out of concern for the community and not for personal benefit.' [Citations omitted.]"

Partridge looks to *Florida v. J.L.*, 529 U.S. 266, 146 L. Ed. 2d 254, 120 S. Ct. 1375 (2000), for support of his position. In *J.L.*, an anonymous caller told the police a young black male wearing a plaid shirt and standing at a certain bus stop was carrying a gun. In response to the tip, police officers arrived at the bus stop, where they saw three black males " 'just hanging out [there].' " 529 U.S. at 268. One of the males (J.L.) was wearing a plaid shirt. He was frisked and a gun seized from a pocket.

The State charged J.L. with carrying a concealed firearm without a license and possessing a firearm while under 18 years of age. J.L. moved to suppress the gun as the fruit of an unlawful search. The trial court granted the motion but was reversed by the intermediate appellate court. The Florida Supreme Court then held that the search was, indeed, invalid under the Fourth Amendment to the United States Constitution because the anonymous tip was not accompanied by specific indicia of reliability and, as such, could not form the basis for reasonable suspicion.

The United States Supreme Court affirmed the decision of the Florida Supreme Court. 529 U.S. at 274. In concluding the officers did not have reasonable suspicion, Justice Ginsburg explained:

"In the instant case, the officers' suspicion that J. L. was carrying a weapon arose not from any observations of their own but solely from a call made from an unknown location by an unknown caller. Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, see *Adams v. Williams*, 407 U.S. 143, 146-47[, 32 L. Ed. 2d 612, 92 S. Ct. 1921] (1972), 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity,' *Alabama v. White*, 496 U.S. [325], 329[, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990)]. As we have recognized, however, there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.' [496 U.S.] at 327. The question we here confront is whether the tip pointing to J. L. had those indicia of reliability." 529 U.S. at 270.

The Court recognized the limited reliability of an anonymous informant's description of a subject's readily observable location and appearance, in that it helped officers correctly identify the

suspect. The Court explained, however, that such a tip did not demonstrate the informant's knowledge of criminal activity. "The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." 529 U.S. at 272.

In the present appeal, Partridge argues the tip leading to his stop was the kind rejected in *J.L.*, requiring reversal of the trial court's decision. We do not agree. The holding in *J.L.* has no application under the facts presented. Here, there was a citizen-informant who identified herself and gave firsthand contemporaneous information of Partridge's erratic driving upon a public highway. Further, we have previously stated that in the case of stopping "a mobile automobile, the requirements to justify a stop or search or arrest are lessened." *Tucker*, 19 Kan. App. 2d at 923.

Under the facts of this appeal, where a motorist calls a law enforcement agency, identifies herself, and gives firsthand information she is following a car being driven at that very moment on a public highway in such a manner as to endanger the lives of the caller and other motorists, there is an adequate showing of the informant's basis of knowledge and veracity to support reasonable suspicion justifying the stop for further investigation. We hold the trial court did not err in overruling Partridge's motion to suppress.

Affirmed.